J-S28009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF S.N.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: N.M., BIOLOGICAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 940 WDA 2016 |

Appeal from the Order Entered May 23, 2016
In the Court of Common Pleas of Warren County
Orphans' Court at No(s):  A.N. No. 2 of 2016

BEFORE:   OLSON, MOULTON, and STRASSBURGER[*], JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 12, 2017**

N.M. ("Mother") appeals from the decree dated and entered on May 23, 2016, granting the petition filed by the Warren County Children and Youth Social Services Agency ("CYS" or the "Agency"), and involuntarily terminating her parental rights to her female, special needs child, S.N.W., born in March of 2000 ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b).[1]  Mother's counsel, Attorney Nathaniel J.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother named K.M. as Child's father.  He is believed to be deceased, and to have lived in North Carolina prior to his death.  **See** N.T., 5/23/16, at 27, 42, 60-63, 82.  In the same termination decree entered on May 23, 2016, the trial court also terminated the parental rights of K.M./unnamed, putative father.  On January 18, 2017, the counsel appointed to represent K.M./unnamed, putative father, Attorney Michelle M. Alaskey, filed with this Court a motion to withdraw as counsel.  She asserted that K.M. is either deceased or was a fictitious name, and that a diligent search by both
*(Footnote Continued Next Page)*

Schmidt, ("Counsel"), filed with this Court a petition for leave to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967). We affirm, and grant Counsel's petition to withdraw and supplemental petition to withdraw, as well as the motion to withdraw as counsel filed by the counsel appointed to represent K.M./unnamed, putative father.

On March 22, 2016, CYS filed the petition seeking to involuntarily terminate the parental rights of Mother and K.M./unnamed, putative father. The trial court held an evidentiary hearing on May 23, 2016. Neither Mother nor K.M./unnamed, putative father appeared. The counsel appointed to represent Mother, and the counsel appointed to represent K.M./unnamed putative father were present, and represented their clients' interests. Mother's counsel stated that Mother was living in Kulpmont, North Carolina, where she had previously resided. N.T., 5/23/16, at 4.

CYS first presented the testimony of Child's foster mother, B.S., ("Foster Mother"). *Id.* at 5. Foster Mother testified that Child came to live with her and her husband, W.S. (collectively, "Foster Parents"), and their two children on April 11, 2015. *Id.* at 5-6. Foster Mother also testified that, when Child came to live with them, Child had a developmental age of 18

_(Footnote Continued)_ ————————

Attorney Alaskey and CYS did not produce any individual for Attorney Alaskey to represent in the termination proceedings. We, hereby, grant Attorney Alaskey's motion to withdraw as counsel.

months, and, at the hearing, Child had a developmental age of 24 months. *Id.* at 6-7. Moreover, Foster Mother testified that Child had grown in height, weight, and size since she had come to live with the Foster Parents. *Id.* at 10-12. Child has to wear a diaper and to be bathed, and can only speak ten words that do not communicate her medical condition to Foster Mother. *Id.* at 14. Child calls Foster Mother "Mom" approximately twice a week. *Id.* at 35. Foster Parents are not a pre-adoptive resource for Child. *Id.* at 37-38. There is no time-frame for how long Child will reside with the Foster Parents in foster care. *Id.* at 45-46.

Next, CYS presented the testimony of its caseworker, Amanda Bindics, who had been working with Child since September 8, 2015. *Id.* at 47. In her testimony, Ms. Bindics explained that Child has cerebral palsy and pyruvate dehydrogenase complex deficiency. *Id.* at 48. Ms. Bindics also testified that Child has no family available with whom Child may reside in long-term placement. *Id.* at 70. Moreover, Ms. Bindics testified that Mother is not a placement option for Child. *Id.* She stated that Child would not be affected if Mother's parental rights were terminated, and that Child would be unaware of such a termination. *Id.* Additionally, Ms. Bindics testified that Foster Parents are providing for all of Child's physical, emotional and developmental needs. *Id.* at 71.

Based on this testimony and CYS exhibits 1-21, which the trial court admitted into evidence, the trial court made its findings of fact at the

conclusion of the hearing on May 23, 2016, and entered its termination decree on that same date.

Mother timely filed a notice of appeal and concise statement pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) on June 22, 2016. Counsel filed a petition for leave to withdraw as counsel for Mother on December 28, 2016, an *Anders* brief on December 27, 2016, and a supplemental petition for leave to withdraw on January 19, 2017.

In her *Anders* brief, Mother raises one issue challenging the sufficiency of the evidence to support the termination of her parental rights to Child. *See Anders* Brief; Mother's Concise Statement at 1.[2] In its opinion entered on June 24, 2016, the trial court adopted the reasons for the termination decree thoroughly stated at the conclusion of the hearing on May 23, 2016.

Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;

---

[2] In her concise statement that accompanied her notice of appeal, Mother stated her issue somewhat differently from her *Anders* brief, but we find that Mother adequately preserved her issue for our review. *Cf. Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal).

(2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and

(3) furnish a copy of the brief to [the client] and advise him of his right to retain new counsel, proceed **pro se**, or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

In *In re V.E.*, 611 A.2d 1267, 1274-1275 (Pa. Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. "When considering an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *In re S.M.B.*, 856 A.2d at 1237.

In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "After an appellate court receives an **Anders** brief and is satisfied that counsel has complied with the aforementioned

- 5 -

requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

With respect to the third requirement of *Anders*, that counsel inform the client of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Here, in his petition for leave to withdraw filed on December 28, 2016, with this Court, counsel complied with each of the requirements of *Anders*. Counsel indicates that he conscientiously examined the record and determined that an appeal would be frivolous. Further, counsel's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Finally, attached to his supplemental petition for leave to withdraw, filed on January 19, 2017, is a copy of his letter to Mother, dated January 17, 2017. In compliance with *Millisock*, the letter advised Mother of her right to proceed *pro se* or retain alternate counsel and file additional claims, and stated counsel's intention to seek permission to withdraw. Accordingly, counsel has complied with the procedural

requirements for withdrawing from representation, and we will proceed with

our own independent review.[3]

In reviewing an appeal from an order terminating parental rights, we

adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not

---

[3] In its Rule 1925(a) opinion, the trial court did not address Mother's issue, finding the concise statement too vague for review. This Court has stated, however, "[o]nce counsel has satisfied the above requirements [for a motion to withdraw and *Anders* brief], it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (quoting *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa. Super. 2004)). *See Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (following *Goodwin*). Thus, we decline to find that the concise statement is too vague for our review. After conducting an independent review, we also find that this appeal is wholly frivolous.

equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.*, *quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

In the *Anders* brief, Mother contends that the trial court abused its discretion or erred as a matter of law in concluding that the evidence was sufficient to support the involuntary termination of her parental rights under section 2511(a)(1), (2), (5), and (b). Mother suggests that CYS failed to provide reasonable efforts to reunify her with Child.

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section

2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Mother's parental rights under sections 2511(a)(1), (2), (5), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 9 -

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

With respect to subsection 2511(a)(1), our Supreme Court has held as follows.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated:

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal;

(2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Regarding section 2511(a)(5), we have stated:

> we . . . review the record to determine whether [a child has] been removed from [the parent] for six months and whether [the parent] can remedy the conditions leading to the removal of [the child]. *See, In the Interest of Lilley,* 719 A.2d 327, 334 (Pa. Super. 1998) (the child has been removed from the parents by the court and the conditions which led to placement of the child continue to exist and have not been remedied within a reasonable time and termination of parental rights would best serve the needs and welfare of the child). We also note that in considering the importance of stability to a child's welfare, the reasons why the child has been with the third party for so long must be taken into account. *In Re: Adoption of Steven S.,* 612 A.2d 465, 471 (Pa. Super. 1992), *appeal denied,* 625 A.2d 1194 (Pa. 1993).

*In re Adoption of T.B.B.*, 835 A.2d 387, 395 (Pa. Super. 2003).

This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to

section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

At the conclusion of the termination hearing, the trial court stated the following:

> THE COURT: All right.
>
> I'll start with the putative father and/or [K.M.]. Obviously the father of [Child] has never been in the picture according to prior dependency orders. [Mother] indicated that the father was named [K.M.] and that he passed away shortly after [Child's] birth. [Child] is 16 now and whether it was [K.M.] or anybody else, no father has played any part in her life. So clearly the [A]gency has met the grounds under 2511(a) (1) and (2), that there's either an incapacity, abuse, neglect or refusal of the biological father to provide any care to perform any parental duties.
>
> As far as subsection (b) goes there's no dad, no bond, no concerns for the Court other than that [Child's] best interests will be met if the rights of any biological father are terminated.

With respect to [Mother], the [A]gency set forth in its petition three subsections under 2511. First, that the parent by conduct continuing for a period of at least six months immediately proceeding [sic] the filing of the petition either served a subtle purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties, and in this case it's both.

The petition was filed on March 22nd so we go back to September 22nd of last year thereabouts. [Mother's] supervised visits had already terminated two months earlier in July. At best, a chance encounter at Walmart after the six-month clock is ticking, a couple of phone calls towards the middle or end of March, kind of a last ditch effort by [Mother] to re-assert herself, ended up with the usual from her, talking a good game but never following through with it.

The [A]gency frankly went over and above even attempting to schedule supervised visits so that a gift could be given, because by that time I'd ordered that the [A]gency didn't have to make any continued reunification efforts. Once again, she didn't follow through. Her reasons are incredible. As I've indicated in past orders, she has an excuse for just about everything where it came to stepping up to the plate for [Child].

So in the six months immediately filing the petition she performed no parental duties and her actions clearly demonstrate a [settled] purpose of relinquishing her parental claim. She actually was in town for part of that and still couldn't find the energy to schedule contact with [Child].

Under subsection (2), the [A]gency's burden is to show that the repeated and continued incapacity, abuse, neglect or refusal of the mother has caused [Child] to be without essential parental care, control or subsistence necessary for her physical or mental well[-]being, and the conditions and causes of that incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

As of placement last April, it's quite clear that [Mother] was neglecting [Child] in just about every facet of her life. Starving her on weekends, having her stay at hospitals after her discharges because of whatever personal issues she was having, not following up on specialized medical appointments, not participating at school, not changing [Child's] diaper before

school, the school[']s having to shower [Child], change her because [Mother] was neglectful in those regards.

[Child's] growth really is obscene when you see the progress she made under the roof of people who give a darn, gained weight consistently, thrived in every aspect of her being, verbally, physically, developmentally, didn't miss 30 days of school that's for sure, and when she showed up she was healthy, happy, ready to be educated.

And there's absolutely nothing that's occurred since placement that would indicate [Mother] is in any better place to address those [issues]. She's been absent. Her supervised visits, 11 out of 25, when they were in place dropped out in July ten months ago, has had really essentially no ability to indicate that she would be able to address those issues.

And I'm just not talking about from a financial aspect or housing, that help is available. I've seen the [A]gency help a parent in bad economic straits reunify with a child, it happens all the time when the parent wants it to, when they're willing to put the child's needs above their own, but nothing [Mother] has done throughout indicates that's a priority for her.

So under 2511(a) (2) the [A]gency has met its burden of proof by clear and convincing evidence again that those grounds exist.

And, finally, subsection (a)(5), [Child] was removed from the care of [Mother] at least six months ago, it was in April of 2015, so we're talking about 13 months. The conditions that led to the removal or placement of [Child] continue to exist. The parent cannot or will not remedy those conditions within a reasonable period of time and the services or assistance reasonably available to [Mother] are not likely to remedy the conditions that led to [Child's] removal and best interests would -- and termination of parental rights would serve [Child's] best interests.

Again, [Child's] been in agency custody 13 months. There has been no progress of any kind by [Mother] to alleviate the circumstances that led to [Child's] placement. The [A]gency has gone once again over and above providing transportation, holding her hand, trying to get her to medical appointments, IEP meetings, scheduling supervised visits where transportation was

provided, really to start with an open door communication policy in the foster home. [Mother] has done nothing. She's had services available and clearly termination of parental rights would best serve [Child's] needs.

And I'll address that now with respect to 2511(b). Clearly there's not going to be any harm to [Child's] developmental, physical and emotional needs if [Mother's] rights are terminated. She won't know it occurred and she never will. She recognizes [Mother] just as another face at the beauty salon at Walmart. Nothing more, nothing less. Recognizes her aunt or her friend [K.] more than her biological mother and it's to be expected. It went from at the very beginning supervised visits, [Child] demonstrating openly that she is excited to see [Mother] to what happened last September at Walmart which was
essentially somebody at the mall coming up to sing.

The relationship between [Foster Mother] and [Child] obviously indicates that she's capable of forming strong attachments with caregivers. For whatever reason, whatever occurred in the 15 years in [Mother's] care didn't result in the type of attachment that [Child] wouldn't completely forget about her after a half a year, and again, I understand [Child's] functional limitations, but apparently it doesn't prevent her from forming attachments and keeping those attachments.

And, again, I'm really not giving any weight to [Mother's] inability to find a home, to work, to provide medical care, clothing to the extent that they're environmental factors because that's not really any part of the equation. It's [Mother's] resolve or determination that it's not worth the fight, not worth the effort to cooperate with the [A]gency to take advantage of those services.

So those are really side issues to the ultimate consideration and that is [Mother] has given up unfortunately, and frankly, I understand the nature of having a child with those type of special needs, but she wasn't coming anywhere near her obligations, not when she's starving [Child] on weekends, not getting her to medical appointments, having her sit in a hospital for inpatient care for days at a time, not showing up or not indicating where she's going to be at, not having the energy to change a diaper in the morning. Those are the considerations that I'm giving to subsection (b).

- 15 -

And I do need to put on the record, and it's not meant to be anything other than making the record complete, but I fully understand that [Child's] permanency will not be with the [Foster Parents] and I'm certainly considering that. It would be even more of a no-brainer if the [Foster Parents] planned on adopting [Child]. They're not, they've done their part that's for sure, and apparently they're willing to continue to do their part, and I have absolutely no question that the [A]gency, the [Foster Parents] and the foster -- or, the adoptive home that's located in the future will all work together to make that final transition a successful one for [Child].

Would it be easier if there wasn't going to be one more transition? Sure, but certainly a transition back to [Mother] isn't in [Child's] best interest. There would be no reason, nothing of record to indicate that I should try to keep that open as a possibility, so there's nothing there, no bond, no attachment, no history of appropriate care, no cooperation with the [A]gency during the placement period, just a horrible reunification with [Child].

So I just want the record to make it clear that I understand that [Foster Parents] aren't the permanent home for [Child], but the fact that she can remain there and [Foster Parents] and the [A]gency will oversee her placement in an adoptive home certainly is in her best interests under subsection (b).

So on that basis I will be entering the proposed decree of termination with respect to [Mother], [K.M.] and unknown putative father and that the [A]gency can continue with adoption without any further notice to the biological parents.

N.T., 5/23/16, at 82-90.

While Mother suggests that the trial court abused its discretion and erred as a matter of law in terminating her parental rights when CYS failed to provide her with reasonable efforts to promote reunification between her and Child prior to filing the termination petitions, our Supreme Court has held that an agency's failure to provide reasonable reunification services

does not preclude termination of parental rights. *In the Interest of: D.C.D.*, 105 A.3d 662, 675 (Pa. 2014). Thus, we find her argument lacks merit.

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, it was proper for the trial court to find no bond exists such that Child would suffer permanent emotional harm if Mother's parental rights were terminated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). It is well settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007, *citing In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting."). Also, there is no need to postpone termination until the agency identifies an adoptive family. *See In re T.S.M.*, 71 A.3d at 268-269.

As we find the trial court's conclusions are supported by competent evidence in the record, we affirm the termination of Mother's parental rights with regard to Child under section 2511(a)(1), (2), (5), and (b), on the basis of the trial court's statement on the record at the conclusion of the hearing on May 23, 2016. *See* N.T., 5/23/16, at 82-90. We also grant counsel's

petition and supplemental petition to withdraw as counsel for Mother, as well as the motion to withdraw filed by the counsel appointed to represent K.M. and any unnamed, putative father.

Decree affirmed. Petition and supplemental petition to withdraw filed by Mother's counsel granted. Motion to withdraw filed by K.M./unnamed, putative father's counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2017